UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA | GOVERNMENT'S TRIAL BRIEF |
| v. | Crim. No. 8:18-CR-362 |
| **ALVIN COLE**, | |
| Defendant. | Hon. Mae A. D'Agostino |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COMES NOW the United States of America, by and through Grant C. Jaquith, the United States Attorney for the Northern District of New York, Edward P. Grogan, of counsel, and hereby submits its Trial Memorandum in the above-titled action.

## I.  STATEMENT OF THE CASE

On October 31, 2018, the Grand Jury returned a two-count Indictment alleging that on or about October 16, 2018, at or near Champlain, New York, the defendant committed the criminal offenses of false material statements to federal officials, in violation of 18 U.S.C. § 1001 (a)(2) and false claim of United States citizenship, in violation of 18 U.S.C. § 911. The alleged false statements pertain to the defendant's oral assertions during the border inspection process that he was a United States citizen born in Philadelphia, Pennsylvania. (The Indictment, docket no. 5). The defendant has pled not guilty.  He is a citizen of Liberia and had legal immigration status in the United States at one time but is now subject to an order of removal and was released subject to immigration supervision.   He has been detained since his arrest on October 31, 2018.

The Government anticipates a defense of general denial.

Trial is scheduled to begin on March 4, 2019, before the Honorable Norman A. Mordue. Neither the United States nor the defendant has waived the right to a jury trial. The United States estimates the trial will require two days and perhaps part of a third day.

II.     **STATEMENT OF THE FACTS**

On October 31, 2018, the defendant was a passenger in a 2016 Hyundai Elantra automobile with Pennsylvania registration that apparently arrived at the Canadian Port of Entry at LaColle, Quebec by mistake that night.  The defendant was a passenger in the car.  According to the Canadian Border Services Agency officers who dealt with the defendant, he claimed that he had made a wrong turn, had arrived at the border by mistake, and that he was a United States citizen.  A Canadian officer reported to a United States CBP officer that the group of three men had stated that they were attempting to go from Plattsburgh, New York to New Hampshire and made a wrong turn.  Alvin Cole told the Canadians that he was a United States citizen.  The Canadians checked Mr. Cole's background in their own record checks and saw that he was actually a citizen of Liberia.

Cole and his two companions were asked to follow by car the Canadian officer as he drove to the Champlain POE. Upon arrival at the POE, the defendant and his companions, Augustine Sneh and Gwenigale Selewoyan, walked into the lobby of the inspection area.  All three of the men were initially asked to declare any items that they may have in their possession and in the car.  They were asked for identification.  The defendant Alvin Cole presented a Pennsylvania identification card.

Customs and Border Protection officer Prell asked Cole about his citizenship.  Cole answered that he was born in Philadelphia, Pennsylvania and was a United States citizen.  Officer Prell asked Cole again to clarify that he was in fact stating that he was a U.S. citizen and again he

2

replied "Yes" he was. Officer Prell asked Cole where he was born and he stated that he was born in Philadelphia, Pennsylvania. Officer Prell was present when CBP officers checked Cole's fingerprints through the automatic database and it came back with an alien number for Cole. Cole was asked again if he was a United Stats citizen and he stated "yes."

A search of the luggage found in the car revealed a Cayuga County Sheriff's Office receipt and release for property dated October 9, 2018. The receipt indicated that certain items had been seized from Alvin Cole by the Cayuga County Sheriff's office. Items similar to those listed on the receipt were found in the car. CBP Officer Rodriguez asked Cole about the receipt and the items and Cole stated that it was a misunderstanding and that the paper was used to make tickets for their show.

CBP Enforcement Officer Brault then interviewed Cole. He asked Cole where he was born and his citizenship. Cole answered that he was born in Philadelphia and was a United States citizen.

CBP Enforcement Officer Brault looked into the matter. The individual, Alvin Cole, was insisting that he was a United States citizen. Records checks based on fingerprint data, records that CBP officers rely on in the performance of their duties, indicated that Alvin Cole was an alien, a citizen of Liberia. Brault determined from official DHS records that Cole was assigned a unique alien registration number. Record checks also showed that Cole was issued a final order of removal issued by an Immigration Judge on September 20, 2012. A review of records indicated to Brault that there were no pending immigration appeals or applications for benefits with the United States. Records also showed that Cole was failed to report for ICE supervision on January, 17, 2018; and

– June 13, 2013 Alvin Cole was placed under supervision and was permitted to be at large under conditions because the Department of Homeland Security did not enforce his

3

deportation or removal during the period prescribed by law.

–       June 14, 1997, an applicant for Employment Authorization; and

–       June 14, 1997, an applicant for Status in the United States.

On October 16, 2018, CBP officers determined that the defendant was not a United States citizen and that he was an alien subject to a removal order. He was arrested and advised of his Miranda warnings by CBP Officer Jason Brault. Alvin Cole stated that he believed that he was a United States citizen. Officer Brault asked Cole if he had ever been deported, to which Cole stated, "I don't know what you're talking about, as far as I know I'm a US citizen, that's what they tell me." Officer Brault reports that Cole said that he was born in Philadelphia and that she he was a child his parents moved him to Liberia. Officer Brault asked Cole about his immigration status and he answered, "You have all the information in front of you, you tell me." Cole stated that he met someone named Tiffany in Plattsburgh, and that he was destined for New Hampshire. Cole stated to Agents Fay and Quackenbush that they had spent a night in Nashua, New Hampshire and that that they were going back there and that they had been on the road for two weeks from Philly.

According to the evidence in the alien file, Alvin Cole is not a United States citizen and he was not born in Philadelphia, Pennsylvania. He entered the United States in 1991 as a tourist and overstayed his visa. He did not leave. In 1997, he sought permission to stay in the United States under the temporary protected status (TPS) that is available when circumstances are such in the alien's home country that it would be inappropriate to return the individual to his or her home country. Alvin Cole received status in the United States. However, as he was convicted of criminal offenses, he was processed for removal. As part of the removal process, he was ordered removed from the United States. He was ordered removed from the United States on September 20, 2012. He was not, in fact, removed however and on June 13, 2013, he was released under an

4

order of immigration supervision. The immigration supervision required that he not travel outside Pennsylvania for more than 48 hours without prior permission, that he report in person to an ICE office as directed, and that he not associate with criminals. When Cole was encountered at the Champlain POE, he was in violation of the terms of his immigration supervision.

## III. LEGAL SUMMARY OF THE STATUTE

**False statements to a federal official - 18 U.S.C. § 1001 (a) (2)**

The elements of this offense are as follows:

*First,* the Defendant knowingly made a material false statement;

*Second,* the Defendant made the statement voluntarily and intentionally; and

*Third,* the Defendant made the statement in a matter within the jurisdiction of the Department of Homeland Security, Bureau of Customs and Border Protection, an agency in the executive branch of the United States Government.

A false statement is made "knowingly" if a defendant knew that it was false.

A statement is "material" if it has a natural tendency to influence or to be capable of influencing the decision of the decision maker or agency to which it was addressed.

A statement is "false" if it was untrue when made.

## IV. LEGAL ISSUES AND AUTHORITY

**A.   Evidentiary matters**

**(I)   The defendant's statements are not hearsay.**

The Government intends to offer oral and written statements made by the defendant to federal immigration and law enforcement officers as proof of his knowledge that

5

his statements on October 16, 2018 were false and material. Under Rule 801(d)(2) of the Federal Rules of Evidence, such evidence is not hearsay because the declarant is a party-opponent. *See e.g. United States v. Meskini*, 319 F. 3d 88, 93 (2nd Cir. 2003); *United States v. Inserra*, 34 F. 3d 83, 93 (2nd Cir. 1994); Rule 801(d)(2), F.R.E. All of the relevant statements and admissions regarding immigration admissibility are documented in the official DHS immigration file and discovery. What the defendant knew and when are an inextricable part of the *res gestae* in this case, and thus highly relevant and admissible.

> **(II)** **The documentation and records contained in the defendant's official immigration file and records are nontestimonial and thus not subject to *Crawford* limitation.**

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits the admission at trial of testimonial statements that are not subject to cross-examination. Id. at 50-51. However, in this case the official government records of the Department of Homeland Security identified as Government exhibits in this case are not testimonial and thus not subject to these limitations.

The courts have held when a document "was not made in anticipation of litigation, and ... is simply a routine, objective, cataloging of an unambiguous factual matter," the document is nontestimonial. *United States v. Bahena-Cardenas,* 411 F.3d 1067, 1075 (9th Cir.2005) (holding that a warrant of deportation is nontestimonial). The Government's exhibits from the defendant's alien file and other official records were not made in anticipation of litigation, but are records routinely made and kept by the Department of Homeland Security. Many are contained within the defendant's alien file ("A-file"), a public immigration record. See *United*

*States v. Ballesteros-Selinger*, 454 F.3d 973, 975 (9th Cir.2006). "Public records[1] ... are not themselves testimonial in nature and ... these records do not fall within the prohibition established by the Supreme Court in *Crawford. United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir.2005). To the extent the records the Government seeks to admit are non-hearsay statements of the defendant, they are admissible as non-testimonial, public records or regularly maintained business records under Rule 803(6), F.R.E. See *United States v. Feliz*, 467 F.3d 227 (2nd Circ. 2006) (Court's *Crawford* analysis of autopsy reports as nontestimonial and admissible as either business or public records.)

## V. CONCLUSION

The United States respectfully submits its trial memorandum to the Court.

                         GRANT C. JAQUITH
                         UNITED STATES ATTORNEY

                BY:   /s/ Edward P. Grogan
                        Edward P. Grogan
                        Assistant United States Attorney
                        Bar Roll No. 506388

---

[1] Rule 803(8) of the F.R.E. addresses the admissibility public records:

Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

## CERTIFICATE OF SERVICE

This document was served upon defense counsel of record electronically through the ECF system

                              */s/ Edward P. Grogan*
By:    Edward P. Grogan